In the Matter of the Liquidation of LAWYERS TITLE AND GUAR-
ANTY COMPANY.

Supreme Court, Additional Special Term, New York County, October 25, 1937.

*William D. Leider*, for the Superintendent of Insurance of the State of New York.

*Maurice Finkelstein* [*Jacob L. Holtzmann* of counsel], for the Mortgage Commission of the State of New York.

*Raphael H. Weissman* [*Alfred Jaretzki, Jr.,* and *Malcom A. McIntyre* of counsel], for the Globe & Rutgers Fire Insurance Company.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* of counsel], for the creditors' committee of the New York Title and Mortgage Company.

*Mitchell, Taylor, Capron & Marsh* [*E. W. Cooney* and *E. L. Hunt* of counsel], for the City Bank Farmers Trust Company.

*Thomas Keogh,* for Louis A. Green and others.

*Leon Leighton,* for A. Schraders' Sons and others.

*Abraham N. Geller* and *Robert B. Block,* for Lubin and others.

*Larkin, Rathbone & Perry* [*Stephen Millett* of counsel], for the Central Hanover Bank and Trust Company.

*Pollock & Nemerov* [*Robert Gordon* of counsel], for certificate holders.

*Maurice B. & Daniel W. Blumenthal* [*Irving Feldman* of counsel], for various creditors.

*Hoffman & Hoffman* [*Charles D. Hoffman* of counsel], for Mrs. Bach and others, certificate holders.

*Leon London,* for Stewart Forshay, as trustee.

*Alexander E. Klupt,* for the trustee of Series C-3, New York Title and Mortgage Company, and various certificate holders.

FRANKENTHALER, J. The Superintendent of Insurance, as liquidator of Lawyers Title and Guaranty Company, has applied to this court for approval of his acceptance of an offer, made by Globe and Rutgers Fire Insurance Company, relating to certain valuable assets of Lawyers Title and Guaranty Company and of Lawyers Title Corporation. On the return day of the application it was opposed by attorneys for many certificate holders and other creditors of Lawyers Title and Guaranty Company. Counsel for the Mortgage Commission expressed himself as unprepared at this time, without further study, to say whether the offer was " a fair one or not a fair one." Thereafter Hon. Edward R. Rayher was appointed referee to take testimony and report with his opinion with all convenient speed, the time limit contained in the offer making rapid action necessary. After extended hearings the learned referee has filed a report recommending that the court disapprove the Superintendent's acceptance of the offer as " unfair and inequitable to the creditors of Lawyers Title & Guaranty

Company." The referee finds that "the offer is inadequate, the emergency does not warrant a sacrifice sale of the title plant and good will, at this time; the result of the acceptance of the offer is not liquidation." The Superintendent of Insurance now moves for an order rejecting the report and approving his acceptance of the Globe and Rutgers offer. The motion is opposed not only by most of the creditors of Lawyers Title and Guaranty Company, who have appeared in this proceeding, but also by the Mortgage Commission, which took the same position at the hearings before the referee.

In view of the thorough and able manner in which the learned referee, in a report covering forty-eight printed pages, has analyzed the voluminous evidence before him, and in view of the manifest soundness of the conclusions reached by him, it would be superfluous to do more than comment briefly upon the nature of the offer and the reasons for the court's concurrence in the opinion of the referee that the Superintendent's acceptance of the offer should be disapproved.

Under the terms of the Globe and Rutgers offer, the stock of Lawyers Title Corporation, all of which is at present held by the Superintendent of Insurance as liquidator of Lawyers Title and Guaranty Company, would be reclassified into 13,000 shares of preferred stock and 120,000 shares of common stock. The Superintendent would receive all the preferred stock in return for net assets of $1,300,000, consisting of (a) $200,000 in cash, (b) $650,000 in first mortgages or senior participations therein, and (c) the title plant, good will, furniture, fixtures, equipment, supplies, leases and contracts of Lawyers Title Corporation, valued for the purposes of the agreement at $450,000. One hundred thousand shares of the common stock would be purchased for $500,000 by the Globe and Rutgers Fire Insurance Company, which owns almost half the outstanding stock of Lawyers Title and Guaranty Company, at present in the hands of the Superintendent of Insurance for purposes of liquidation (subject to the right of other stockholders to subscribe in proportion to their respective holdings). The Superintendent would receive, in addition to the preferred stock, warrants entitling him to purchase the remaining 20,000 shares of common stock at five dollars per share at any time within five years.

The preferred stock would be entitled to $100 per share on liquidation or redemption and would have to be redeemed by the Lawyers Title Corporation at the end of five years from the closing of the transaction. In the meantime each share of preferred stock would be entitled to a fixed cumulative dividend of two dollars and fifty

cents per share per annum, plus one-sixth of the balance of the annual net income of the corporation available for dividends, the total dividend in any one year not to exceed, however, six dollars per share. The preferred stock, unless otherwise specifically provided by statute, would possess no voting rights whatsoever except in the following contingencies: (a) If at the end of any month the net cash operating loss of the corporation for the period commencing with the closing of the transaction shall exceed $250,000; (b) if any annual fixed dividend on the preferred stock shall remain unpaid for forty-five days after its due date, and (c) if the preferred stock shall not have been redeemed at the expiration of five years from the closing; during the existence of any such defaults each share of preferred stock would be entitled to twenty votes and to elect a majority but not more than two-thirds of the board of directors; the corporation would be entitled, however, to eighteen months within which to cure defaults (a) and/or (b), *supra*, and to one year to remedy default (c), *supra*, and during these periods of grace the preferred stockholders would be barred from taking action which might impair the right of the company to remedy such defaults. While the defaults continued to exist the preferred stock would be entitled, in addition to fixed and participating dividends (only fixed dividends in case of a default in redemption) to participation in the income of the corporation as if each preferred share represented twenty shares of common stock. As long as any preferred stock remained outstanding, without provision being made for its retirement, cash dividends on the common stock would be limited to a sum equal to one-half of the earnings available therefor after payment of dividends on the preferred stock.

Acceptance of this offer would mean that in return for $850,000 in cash and prime mortgages, netting four and one-half per cent per annum, and the title plant and good will, valued at $450,000, the Superintendent of Insurance (except for warrants entitling him to purchase some common stock at five dollars per share) would receive only preferred stock required to be redeemed for $1,300,000 at the end of five years, in a company with a capital and surplus of only $1,800,000 — the other $500,000 representing the cash to be paid by the offeror for common stock. In the interim all control over these assets of $1,300,000 would be surrendered by the Superintendent, not to be regained unless the corporation should lose $250,000 or should fail to pay the fixed dividend of two dollars and fifty cents per annum on the preferred shares. In this connection it is to be noted, as the referee points out in his report, that the redemption of the preferred stock " while

contemplated is not guaranteed." At one of the hearings before the referee, Deputy Superintendent of Insurance Traynor admitted that there was no assurance that the preferred stock would be redeemed by the corporation as required, and that on default all the Superintendent of Insurance would get would be control of the corporation through acquisition of voting rights. The illusory nature of the provision for the redemption of the $1,300,000 in preferred stock becomes readily apparent when consideration is given to the fact that the entire capital and surplus of the company after the closing would be only $1,800,000. The company has shown only losses during each of the four years of its existence (it was created by the Superintendent of Insurance in the summer of 1933, at the time he took possession of the Lawyers Title and Guaranty Company for purposes of rehabilitation), and, although better results are anticipated under private management with added capital, there is no reasonable basis, as far as the record shows, for expecting the corporation to be so successful that it will be able, at the end of five years, to pay out thirteen-eighteenths of the capital and surplus which it is to possess at the start of the five-year period.

Nor is there any reasonable likelihood that the preferred stock held by the Superintendent may acquire voting rights and control of the corporation during the five years by reason of a default in the payment of the fixed annual dividend of two dollars and fifty cents per share of preferred stock. As the referee has well pointed out, the cash and mortgages to be left with the corporation by the liquidator are more than sufficient in themselves, without regard to the title plant and other assets aggregating $450,000, to meet this dividend: " In the meantime the two and one-half per cent or $162,500 dividend paid to the liquidator on the 13,000 shares of preferred stock could be paid by the recapitalized company out of the return obtained by it on the $650,000 prime mortgages, which yield four and one-half per cent per annum, or $146,250 at simple interest; together with the income on the $200,000 in cash which at simple interest of two per cent for five years would yield $20,000."

To enable the preferred stock to receive any substantial dividends in excess of the fixed dividend of two and one-half per cent per annum, the corporation's operations would have to prove much more successful than can be reasonably anticipated at this time. For every additional dividend of one dollar per year to the preferred stock the additional corporate earnings would have to amount to $78,000 — for each share of preferred stock is to receive only one-sixth of the additional income available for dividends

after paying the fixed dividend of two and one-half per cent. To return five per cent per annum on the amount invested by the Superintendent the annual net income available for dividends would have to be $227,500. Such a showing by a company with cash and mortgage assets of only $1,350,000 and a total capital and surplus of but $1,800,000 would seem to be entirely too much to expect during the first five years, particularly in the light of the fact that the company's record to date is one of losses. It is important, in this connection, to note that the prospects for the success of the recapitalized corporation in the title insurance and mortgage business are likely to be very detrimentally affected by the requirement that the corporation at the end of five years pay out $1,300,000 in redemption of the preferred stock. Such a weak capital structure might be calculated to discourage prospective purchasers of title insurance from ·dealing with the corporation and thus produce a result diametrically opposed to that which, according to the Superintendent's claim, is to be anticipated from the injection of private management and added capital.

Under these circumstances the court is wholly in accord with the referee's findings that " the offer is inadequate because the creditors, while contributing 72.3 per cent (13/18) of the total assets are excluded from control except in instances of certain specified defaults outlined in the offer," whereas " the offeror contributing only 27.7 per cent of the total assets of the recapitalized corporation, would be given control for five years   *   *   * the opposite of the general financial custom, that the party furnishing the bulk of the capital obtains control, or at least some representation in the control   *   *   *. Not only is the liquidation of assets amounting to $1,300,000 postponed for the further period of five or six years (six years because of the grace period of one year within which to remedy a default in redemption) but in the event of the failure of the enterprise, the Superintendent at the end of that time will be required to liquidate the assets with the expense incidental to such liquidation borne by the creditors of Lawyers Title & Guaranty Company."

In addition to finding the offer inadequate and unfair from the standpoint of the creditors of Lawyers Title and Guaranty Company, the referee has come to the conclusion that acceptance of the offer would not represent an act of liquidation on the part of the Superintendent of Insurance, and would, therefore, constitute a violation of article XI of the Insurance Law. After pointing out that the order of liquidation, dated January 21, 1936, directs the Superintendent " to take possession forthwith of the property of the Lawyers Title & Guaranty Company and to liquidate the

business thereof, pursuant to the provisions of Article XI of the Insurance Law, and all other provisions of law applicable thereto," and that section 404 of article XI of the Insurance Law provides that an order of liquidation shall direct the Superintendent of Insurance after taking possession of the property of an insurer " to liquidate the business of the same," the referee continues as follows:

" It will thus be seen that the only power the Superintendent of Insurance possesses, as liquidator, is derived from the order of liquidation conferring upon the Superintendent the duties of liquidator as prescribed by statute. The duty imposed upon the Superintendent of Insurance is clearly the duty: ' to take possession forthwith of the property of the Lawyers Title and Guaranty Company and to liquidate the business thereof.'

" The offer at Bar, accepted by the Superintendent of Insurance, as liquidator, provides for the turning over to stockholders of Lawyers Title and Guaranty Corporation (whose interest is subordinate to the interest of creditors of said Corporation, and who are entitled to nothing until the creditors with fixed claims and those with contingent claims are paid in full) $200,000 in cash, plus $650,000 in prime mortgages, now yielding $4\frac{1}{2}$ per cent. and the title plant and good will of Lawyers Title Corporation, valued for the purposes of the offer at $450,000 — or assets in the aggregate of $1,300,000. In thus turning over the assets referred to, the Superintendent, as liquidator of Lawyers Title and Guaranty Company, relinquishes all control over said assets, for a period of five years in exchange for preferred stock, the redemption of which while contemplated is not guaranteed, and the value of which, upon the closing of the contract or at any time during the five-year period thereafter, would be any man's guess. This is in no sense a liquidation, and is contrary to the whole plan of Article XI of the Insurance Law; it also violates the legislative intent clearly expressed in Article XI of the Insurance Law.

" The Superintendent of Insurance, by virtue of his appointment as Liquidator, became a fiduciary; and the property of Lawyers Title and Guaranty Company taken into his possession constitutes a trust to be administered for the benefit of creditors of said corporation.

" That a fiduciary may not use trust funds to speculate is elementary. Yet that is precisely what the Superintendent seeks to do with the sanction of the Court; and that would be the precise result of an approval of the offer by the Court. The Court may not, in my opinion, invest a liquidator, appointed pursuant to Article XI of the Insurance Law, with such power. To do so would

thwart the legislative intent clearly expressed, and without ambiguity in Article XI, that the duty of a liquidator is to liquidate.

" The statutes from which the liquidator derives his authority constitute an insurmountable obstacle to the approval of his acceptance of the offer.

" The creditors of Lawyers Title and Guaranty Company are entitled to the protection of Article XI of the Insurance Law. An approval of the offer would deprive the non-assenting creditors of this statutory protection and would therefore be unfair and inequitable."

If the Globe and Rutgers offer contained no provision requiring the redemption of the preferred stock at the end of five years, there could be little doubt, in the court's opinion, that investment in the preferred stock of a continuing business would not be an act of liquidation and would, therefore, transcend the powers of the Superintendent of Insurance as *liquidator* of Lawyers Title and Guaranty Company. Although the liquidator, in disposing of assets in his possession, is not limited to sales for cash and may extend credit for some or all of the purchase price, there must be a definite obligation to pay the unpaid portion of the price. Mere investment in preferred or common stock is not sufficient. Although the offer now under consideration does literally provide that the preferred stock issued to the Superintendent is to be redeemed at the end of five years, the doubtful validity and efficacy of this provision from a practical standpoint, as previously pointed out, make it a serious question whether the redemption clause should be permitted to make that legal which would otherwise be illegal. The court should look through form to substance. It is, however, unnecessary for the purposes of the present application to determine definitely whether acceptance of the Globe and Rutgers offer would constitute a violation of article XI of the Insurance Law, as the court, for the reasons heretofore mentioned, has arrived at the conclusion that the referee properly found the offer inadequate and unfair to creditors of Lawyers Title and Guaranty Company.

The Superintendent of Insurance justifies his acceptance of the offer on the theory that he has been and is faced with an emergency, namely, the urgent need of eliminating the continuous drain which the operating deficits of Lawyers Title Corporation constitute upon the estate in liquidation. The referee has, however, reported that no emergency exists which warrants judicial approval of the Globe and Rutgers offer. As a result of economies effected *after March, 1936*, aggregating over $155,000 annually, the deficits have been very substantially decreased without affecting the ability of the reduced staff to handle business in excess of the present volume.

If a saving of $8,500 per annum in the rental for the Jamaica office space of the corporation which was not effected until March 1, 1937, had been made prior to August 1, 1936, the net loss (before profit and loss credits) of $7,489.05 for the period commencing August 1, 1936, and ending July 31, 1937, would have been reduced to approximately $2,500. Assuming that the Superintendent of Insurance is correct in his belief that it is necessary to put a stop to the losses, the necessity is nevertheless not so urgent as to justify a *sacrifice* of the assets held by the Superintendent. In order to dispose of the title plant and good will of the company, valued for the purposes of the agreement at $450,000, the Superintendent proposes to divest himself not only of the plant and good will but also of cash and prime mortgages aggregating an additional $850,000, thus possibly jeopardizing the ultimate return of at least part of the $850,000 as well as the payment of any part of the $450,000 fixed as the value of the title plant and good will. The court agrees with the referee's statement that " the alleged benefits resulting from the acceptance of the offer at bar, if approved, are not equivalent to the actual benefits from a cash sale of the plant and good will for less than $450,000."

In addition to the fact that if any emergency exists it would at most justify the sale of the title plant and good will of Lawyers Title Corporation by themselves, without inclusion of cash and prime mortgages aggregating an additional $850,000, there is another consideration that warrants discussion. At the time the present proceeding for the approval of said acceptance was instituted, proceedings were pending before this court, commenced by petition of the Superintendent verified April 9, 1937, for approval by the court of a proposed merger of New York Title Insurance Company into Lawyers Title Corporation, pursuant to an agreement of merger which superseded an earlier agreement of the same character. Although hearings had been held and testimony taken in said proceeding, the Superintendent accepted the offer of the Globe and Rutgers Company (which was almost a fifty per cent stockholder of the insolvent Lawyers Title and Guaranty Company then in process of liquidation by the Superintendent) without first notifying the general creditors committee of New York Title and Mortgage Company involved in the then pending merger proceedings or others possibly interested, who might have made a better offer (whether by amendment of the merger agreement or otherwise) than that submitted by the Globe and Rutgers Company. In answer to the Superintendent's plea that the Globe and Rutgers offer was the best procurable and had to be accepted because of the emergencies of the situation, it has been pointed out that no such

claim could properly be made until those known to be interested or likely to be interested had been given reasonable opportunity to submit offers improving upon that made by the Globe and Rutgers Company. After the hearings before the referee had been concluded and while he was preparing his report the creditors committee of New York Title and Mortgage Company in liquidation submitted an offer which it urges is superior in many respects to that made by Globe and Rutgers Company. It is unnecessary to analyze the new offer at this time for it has not been accepted by the Superintendent, and, furthermore, purports to be a proposal of " principles rather than details, it being the view of the committee that if the principles are accepted the details can readily be developed and defined." This court is satisfied from the proceedings, merger and otherwise, previously instituted before it, that a real interest exists in various quarters in acquiring the title plant and good will of Lawyers Title Corporation. The plant is a very valuable one. As the referee states," There is no other plant in the Metropolitan area comparable to the Lawyers Title plant except the Title Guaranty & Trust Company plant which is an almost identical plant." The plant was built up during a period of over fifty years at an expense of several million dollars. The estimated cost of its reproduction is one million dollars. It is at present insured by the Superintendent of Insurance for half a million dollars. In addition, the good will of Lawyers Title and Guaranty Company is a valuable asset for it has established and maintained a good reputation in its title and search business for more than half a century. To quote again from the referee's report: " As it is a model plant (there being no plant in the Metropolitan area comparable to it, except the one owned by private capital, which is on a par with it) it has an inherent potentiality enabling the purchaser, in case of a sale, or the recapitalized corporation, in case the offer were to be approved, to pool his or its interests with the largest competitor to the advantage of both and the disadvantage of any or all competitors. By an extension of the mutual plan idea, these two largest title companies in the Metropolitan field could reduce the cost of preparing and examining titles and not only thus reduce operating expenses but probably undersell all competitors. Such a plan would be legal in my opinion."

The referee has found, on the basis of the testimony before him, that the value of the title plant and good will is in excess of $450,000. As the court is of the opinion, for reasons previously set forth, that the Superintendent's acceptance of the offer should be disapproved, it is unnecessary for the purposes of the present application to determine whether the value of the title plant and good will does

exceed $450,000. It is sufficient to point out that the title plant and good will are very valuable and that good reason exists for believing that the Superintendent of Insurance will be able to dispose of same on better terms then those embodied in the offer of the Globe and Rutgers Company.

The motion to reject the referee's report and to approve the Superintendent's acceptance of the Globe and Rutgers' offer is accordingly denied; and the cross-motions to confirm the referee's report are granted. Settle order.